

**Dated: February 21, 2019**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Jimmy Ray Stout and | ) | Case No. 06-13093-JDL |
| Glenda Kay Stout, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| Jimmy  Ray Stout, and | ) | |
| Glenda Kay Stout, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ADV. 17-1048-JDL |
| | ) | |
| Ocwen Loan Servicing, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER UPON MOTION TO WITHDRAW
REQUESTS DEEMED ADMITTED**

This is an adversary proceeding brought by Chapter 13 Debtors[1] seeking damages

---

[1] Both the underlying bankruptcy as well as this adversary proceeding were commenced by both Debtors, Jimmy and Glenda Stout.  Mr. Stout passed away on March 1, 2018.

from their mortgage loan servicer, Ocwen Loan Servicing, LLC ("Ocwen"), for failing to adjust its records in violation of a prior order of the court.  Plaintiff seeks actual and punitive damages for damaging her credit, damaging her reputation and causing mental and emotional distress.  Ocwen has pending a Motion for Summary Judgment which, in part, rests upon material facts deemed admitted by virtue of Plaintiff's failure to timely respond to Ocwen's Requests for Admission.  In response to the Motion for Summary Judgment, Plaintiff seeks leave of court to respond to the Requests for Admission out of time.  Before the Court are Plaintiff's *Motion for Enlargement of Time to Respond to Defendant's First Request for Admission to Plaintiff* ("Motion") [Doc. 44][2] and *Defendant Ocwen Loan Servicing, LLC's Objection to the Plaintiff's Motion for Enlargement of Time to Respond to Defendant's First Requests for Admission to Plaintiff* ("Objection") [Doc. 47].  The following constitute the Court's Findings of Fact and Conclusions of Law as required by Fed.R. Bankr.P. 7052 and 9014.[3]

## I. Background

1.  In August 2003 Debtor Jimmy Stout, executed a promissory note in favor of Argent Mortgage Company, LLC, in the amount of and $94,950 secured by a mortgage executed by both him and his wife, Glenda, covering their home in Moore, Oklahoma.  In 2006 foreclosure proceedings were brought by Deutsche Bank, as the servicing agent of Argent.

---

[2] References to Docket Entries in this Order refer to the docket in Adversary Case No. 17-1048, unless otherwise noted.

[3] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

2.  On November 15, 2006, a judgment in foreclosure was entered in the District Court of Cleveland County.  Five days later, on November 20, 2006, Debtors filed a Chapter 13 bankruptcy.

3.  The Debtors' Plan was confirmed and modified three times over the following years.  On February 24, 2012, the Trustee gave Notice of Final Cure Payment to Ocwen showing that the total arrearage claim in the amount of $20,447.77 had been paid, plus interest, making a total payment of $25,007.02. [BK. 06-13093, Doc. 82].  On April 12, 2012, the Trustee filed his Final Report and Motion for Discharge.  The same day the court entered its Discharge of Debtor After Completion of Chapter 13 Plan. [BK. 06-13093, Doc. 84].

4.  On May 11, 2012, the Debtors filed their *Motion to Deem Mortgage Current*. [BK. 06-13093, Doc. 86].  No response to the Motion was made, and on June 5, 2012, the Court entered its *Order Deeming Mortgage Current*, finding that the Debtors' mortgage payments with Ocwen were deemed current as of January 31, 2012. [BK. 06-13093, Doc. 87].

5.  The case was closed on June 11, 2012.  On December 13, 2012, the Debtors filed a *Motion to Reopen Case* for the stated purpose of filing an adversary complaint against Ocwen for failure to comply with the *Order Deeming Mortgage Current* that was entered on June 5, 2012. [BK. 06-13093, Doc. 89].  On January 10, 2013, the Court entered its *Order Granting Motion to Reopen Case*. [BK. 06-13093, Doc. 90].  On February 18, 2013, Debtors filed an *Amended Motion to Show Cause Why Ocwen Loan Servicing, LLC,  Should Not be Held in Contempt for Violating the Court Order.* [BK. 06-13093, Doc. 93].  Attached to the Motion were a series of letters from Ocwen written during 2012 indicating that payments were past due, indicating that the escrow amount had changed

and returning at least one check because the same was not in the amount of the payment due.

6.   Ocwen did not respond to the *Amended Motion to Show Cause*, and on March 21, 2013, the Court entered its *Order Granting Motion to Show Cause* setting the hearing for April 23, 2013. [BK. 06-13093, Doc. 94].   Ocwen did not appear on that date, and the Court entered its *Order Adjudging Ocwen To Be In Contempt*. [BK. 06-13093, Doc. 97]. The Order provided, among other things:

> Ocwen is ordered to adjust its records to reflect that Debtors' account is current through January 31, 2012, as provided in the Order Deeming Mortgage Current; that Ocwen is ordered to pay Debtors' attorney fees and costs for services related to the Motion to Show Cause; and Ocwen is adjudged to be in Contempt for violating the Court's Order Deeming Mortgage Current.

7. On September 16, 2013, the Court entered its *Order on Motion for Approval of Attorney Fees* by which it was ordered that Ocwen pay Debtors' counsel, the firm of Allen & King, attorney's fees in the amount of $5,111.50. [BK. 06-13093, Doc.100].

8. The case was once again closed on August 13, 2014.  It was reopened on motion of the Debtors on August 7, 2017, for the purpose of filing this adversary which was filed on August 10, 2017. [BK. 06-13093, Doc. 103].

9.   Plaintiff's Amended Complaint [Doc. 4] asserts that Ocwen failed to correct its records to show that the account was current as of January 31, 2012, as ordered by the court in the June 5, 2013, *Order Adjudging Ocwen To Be In Contempt* [BK. 06-13093, Doc. 97].  Plaintiff alleges that as a consequence of Ocwen failing to adjust its records she has suffered emotional distress, loss of income and damage to her credit.  She seeks actual and punitive damages.  Plaintiff admits that Ocwen has paid the $5,111.50 in attorney's

fees as ordered by the court. [Response to Motion for Summary Judgment, Doc. 43 ¶ 5].

10. On June 29, 2018, Ocwen served Plaintiff with Requests for Admission; accordingly, responses to the Requests were due to be served on Ocwen on July 29, 2018. The Plaintiff never served Ocwen with her Responses.  It wasn't until three-and-a-half months beyond the time the Responses were due, nearly two months after Ocwen had taken the Plaintiff's deposition on September 20, 2018, more than a month after Ocwen moved for summary judgment, more than a month beyond the discovery deadline and less than one month before the scheduled trial, that Plaintiff filed this Motion.  There is no question that Plaintiff failed to respond to Ocwen's Requests for Admission in a timely fashion.

11. Ocwen has moved for summary judgment. [Doc. 35].  Ocwen relies on two things to establish that there is no dispute as to any material fact.  First, it argues that the Plaintiff's own deposition testimony establishes the absence of an actionable claim. Secondly, it argues that Plaintiff did not timely submit a response to Ocwen's Requests for Admission so that those matters should be deemed admitted under Rule 7036(a).[4]

## II. Discussion

### A. The Applicable Standards For Determining Whether A Party Should Be Permitted to Withdraw Requests Deemed Admitted.

Plaintiff seeks relief from her failure to timely respond to the Requests for Admission premised upon Local Rule 9006-1, which in turn is premised upon Rule 9006 governing the authority of the court to enlarge or extend the time within which an act is required by the Rules.  In its Objection, Ocwen correctly points out that a motion under Rule 9006 seeking

---

[4] A copy of the Ocwen's Requests for Admission served on the Plaintiff on June 28, 2017, which includes Plaintiff's proffered responses is attached as Appendix 1 to this Opinion/Order.

to enlarge the time to act filed after the deadline has passed requires a showing by the moving party of "excusable neglect." Rule 9006(b); See *Pioneer Investment Services Co., v. Brunswick Associates, LP, et al.,* 507 U.S. 380, 395, 113 S.Ct. 1489 (1993) (establishing the factors defining "excusable neglect"); *In re Centric Corp.*, 901 F.2d 1514, 1517 (10th Cir. 1990).

Nowhere in her Motion does Plaintiff assert that her failure to timely respond to the requests for admission was due to excusable neglect. In a motion brought under Rule 9006 the absence of establishing excusable neglect would be fatal. Fortunately for Plaintiff, seeking relief from a failure to timely respond to requests for admissions is not governed by Rule 9006 but by Fed.R.Civ.P. 36, made applicable to bankruptcy proceedings by Rule 7036.

Rule 36(b) entitled "Effect of an Admission; Withdrawing or Amending It" provides as follows:

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admissions to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.***

See *Raiser v. Utah County,* 409 F.3d 1243, 1246 (10th Cir. 2005) (under Rule 36(b) the court may exercise its discretion and permit such withdrawal or amendment "when (1) the presentation of the merits of the action will be subserved thereby and (2) the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining or defending the action on the merits.").

Rule 36(a) does not require a party to prove excusable neglect to explain its failure

to having timely responded to requests for admission. *FDIC v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994) (stating that Rule 36 does not require a party to prove excusable neglect or otherwise explain its failure to timely respond); *Thompson v. Harness*, 2012 WL 1893505 at *1, n. 9 (D. Kan. 2012); *In re Fisher*, 2012 WL 4482441 (Bankr. D. Kan. 2012). Therefore, "the court's focus must be on the effect upon the litigation and prejudice to the resisting party rather than on the moving party's excuses for an erroneous admission." *In re Durability Inc.*, 212 F.3d 551, 556 (10th Cir. 2000). The Tenth Circuit has held "that a response to a motion for summary judgment arguing that the opposing party should not be held to its admissions can constitute a Rule 36(b) motion to withdraw those admissions." *Schendzielos v. Borenstein*, 2016 WL 614473 (D. Colo. 2016) (quoting *Bergemann v. United States,* 820 F.2d 1117, 1120-21 (10th Cir. 1987)). The Court is therefore treating Plaintiff's Motion for Enlargement of Time predicated on Rule 9006 as a motion to withdraw those admissions under Rule 36(b).

As stated in *Raiser*, supra., there are two factors to be considered by the Court in determining whether a party should be permitted to withdraw admissions which are deemed admitted by failure to timely respond to them. The first factor of the test under Rule 36(b) "emphasizes the importance of having the action resolved on the merits, and is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Raiser*, 409 F.3d at 1246. The second factor the Court must consider is whether permitting the Plaintiff to tardily respond to the requests for admission would prejudice Ocwen. "Mere inconvenience does not constitute prejudice for this purpose." *Raiser,* 409 F.3d at 1246. "The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission now has to convince the jury of its truth.

Something more is required." *Bergemann,* 820 F.2d at 1121. "The prejudice contemplated by Rule 36(b) ... relates to the difficulty a party may face in proving its case, e.g. caused by the unavailability of key witnesses, because of the said need to obtain evidence with respect to questions previously deemed admitted." *Raiser,* 409 F.3d at 1246. The Court must apply these two factors to the Motion and the Objection now before it to determine whether Plaintiff should be permitted to withdraw or amend the admissions deemed admitted. Additionally, the Court must consider the effect of the Plaintiff's deposition testimony in considering whether withdrawal of the admissions should be allowed.

### B.  The Requests for Admissions and Proffered Responses

The Plaintiff was served with nine (9) Requests for Admissions to which she seeks the Court to allow her now proffered responses. [Doc. 44-1, Appendix 1]. Plaintiff admits three Requests (Nos. 1, 6 and 9), which ask her to admit that she still resides in the home, that no physician, therapist or other licensed health professional treated her for emotional distress arising from Ocwen's servicing of the loan, and that she did not return a fully executed final modification agreement within the required time frame related to loan modification in or around January 2016. It is irrelevant both for the purposes of summary judgment and for trial, if necessary, to grant Plaintiff relief as to those Requests which she acknowledges should be admitted. As to the remaining six Requests which Plaintiff now seeks to deny, there is little doubt that having at least some, though not all, deemed admitted would "strip" the Plaintiff from maintaining the action on its merits. Under normal circumstances, the Court might well be disposed towards allowing Plaintiff to withdraw the requests deemed admitted; here, however, in deposition the Plaintiff testified under oath inconsistently with regard to several of Ocwen's claims which she now seeks to deny. The

Court must decide whether to permit the Plaintiff to withdraw the requests now deemed admitted in the face of her clear, unequivocal deposition testimony as to the lack of damages for loss of credit, loss of reputation and loss of income.

### C. Should Plaintiff Be Permitted to Withdraw the Deemed Admitted Request for Admission Nos. 4, 5, 7, and 8.

Plaintiff seeks to deny Request No. 4 which asked her to admit "that the last payment you tendered to Ocwen on account of your loan was in or around June 2016." However, in her deposition taken on September 20, 2018 [Doc. 35-3], Plaintiff testified as follows:

> Q: Okay. Perfect. And during this time period where you didn't agree with the balance that they were sending you, you continued to make some monthly payments that you believed to be correct?
>
> A: Yes.
>
> Q: How long did you continue to make those payments?
>
> A: Until June 2016."

[Doc. 35-3, pg. 29, ll. 9-17].

Plaintiff seeks to deny Request No. 5 which asked her to admit "that you have no facts or evidence to support your claim that your reputation has been slandered as a result of Ocwen's servicing of your loan." However, in her deposition Plaintiff testified as follows:

> Q: Okay. There have also been statements in your pleadings that your reputation was slandered. Can you describe what kind of slander or damage occurred to your reputation?
>
> A: Well, I did share this–this whole mess with a few friends.
>
> Q: Okay.
>
> A: Just–and my family. They knew about it. But beyond that, I don't–I don't know.

9

Q: Okay.  And you're the one that shared the information with your family and friends. It wasn't that Ocwen was notifying your family and friends?

A: No.

\*\*\*\*\*

Q: Okay. Do you have any knowledge that Ocwen ever spoke to anybody about the circumstances or situation?

A: I have no knowledge of that.

[Doc. 35-3, pg. 26, ll. 2-15, 20-23].

Plaintiff seeks to deny Request No. 7 which asked her to "admit that you have no facts or evidence to support a contention that any loss in your income was caused by any action of Ocwen?  In her deposition Plaintiff testified as follows:

Q: Okay. You've also mentioned that you had to take off of some work to speak to Ocwen about different issues that you've had. Do you have any kind of estimate as to how much time you took off to speak with Ocwen?

A: I would say probably – – probably five times.

Q: Okay. And five times a year? Five times since 2012, or ---

A: No. I've never spoken to Ocwen.

Q: Okay.

A: So the only time I have is when we were doing the HAMP.

Q: Okay.

A: Or trying to do it.

Q: Do you remember when that was?

A: 2016.

Q: Okay. And when you were trying to do the HAMP, that's when you had to take off time from work?

A: Uh-huh.

Q: Okay. When you say five times, is that five full days?

A: No.

Q: Okay.

A: Just a few hours.

Q: Okay. Have you ever been denied a promotion or other opportunities at work because of these Ocwen matters?

A: No.

[Doc. 35-3, pg.11, ll. 7-25; pg. 12, ll. 1-11].

Plaintiff seeks to deny Request No. 8 which requests that she "admit that you have no facts or evidence to support a contention that your credit rating was damaged by any action of Ocwen." However, in her deposition Plaintiff testified as follows:

Q: Do you know what your credit score is today?

A: Not exactly.

Q: Okay. Do you know what it is compared to what it was before you filed bankruptcy?

A: No.

Q: Okay. Do you have any idea what it was before you filed bankruptcy?

A: If I did, I don't remember

Q: Okay. Since 2012, do you know, has your credit gone up or down?

A: Well–

Q: Or I guess stayed the same? That's also an option.

A: I think it's gotten–I don't know. I don't know.

Q: Okay

A: Since I don't know what it was, I don't know.

Doc. 35-3, pg. 23, ll. 18-25; pg. 24, ll. 1-11].

**** 

Q: Okay. Do you know what kind of—in your pleadings, there were some claims that Ocwen damaged your credit. Do you know what actions they took that damaged it or how they damaged it?

A: We didn't know that they were not reporting any bad credit. We did not know they were not reporting it.

Q: So they haven't been reporting?

A: Huh-uh.

Q: Do you know during what time period were they not reporting?

A: All the way back to 2011 I guess.

Q: Okay. And when you say they weren't reporting bad credit, what you mean by that?

A: Well, we assumed that with everything that they were doing, that–and what we were doing, which is what we were advised to do, they would be reporting that we were delinquent or hadn't made payments. Because they were really–they really were accusing us of that. But we just assumed that it would be on our credit report, but it never was.

Q: Okay. So how did they damage your credit?

A: Well–

Q: In your opinion.

A: Well, all we knew is what we learned when I spoke to Ellie Wade. And since she really didn't pull a credit report, we did not know at that time. She was just going on the information that I gave her.

Q: Okay. So you don't know of any way that Ocwen damaged your credit?

[Doc. 35-3, pg. 24, ll. 18-25; pg. 25, ll. 1-25].

A: I don't.

Q: Okay. There have also been statements in your pleadings that your reputation was slandered. Can you describe what kind of slander or damage occurred to your reputation?

A: Well, I did share this–this whole mess with a few friends.

Q: Okay.

A: Just–and my family. They knew about it. But beyond that, I don't–I don't know.

Q: Okay. And you're the one that shared the information with your family and friends. it wasn't that Ocwen was notifying your family and friends?

A: No.

*****

Q: Okay. Do you have any knowledge that Ocwen ever spoke to anybody about the circumstances or situation?

A: I have no knowledge of that.

[Doc. 35-3, pg. 26, ll. 1-15, 20-23].

In her Response to the Motion for Summary Judgment, Plaintiff's counsel appears to concede that Ocwen did not improperly negatively report Plaintiff's credit: "She (Plaintiff) was not on the promissory note and therefore Ocwen would not report as to her credit, of course there is no *bad* credit, 'there is *no* credit'". (Emphasis added.). [Doc. 43-1, ¶ 10]. Plaintiff attached to her Response her Affidavit in which she asserts, among other things: "Ocwen's failure to correct our records caused harm to us, as we were unable to refinance our home.  I contacted a mortgage broker, Ellie Wade, who informed me that she could not help us because of the negative and incorrect reporting by Ocwen." [Doc. 43-1, pg. 12]. That statement is at variance with the Plaintiff's deposition testimony as recounted above that the mortgage broker, Ellie Wade, in making the decision not to refinance the home *did*

*not rely upon any credit reporting by Ocwen* but only upon information *provided by the Plaintiff.*

The Plaintiff's deposition testimony discussed above appears to the Court to contradict both her Affidavit as well as the denials of her proffered Responses to the Requests for Admission Nos. 4, 5, 7 and 8. The Tenth Circuit has stated that "[t]here is authority for the proposition that in determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986); *Gose v. Board of County Comm'rs of the County of McKinley*, 778 F.Supp.2d 1191, 1195 (D. N.M. 2011). "In assessing a conflict under these circumstances, however, courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Franks,* 796 F.2d at 1237; *Ralston v. Smith & Nephew Richards, Inc*. 275 F.3d 965, 973 (10th Cir. 2001). The rationale for such a holding is that the "conclusion that the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit (or withdrawing deemed admissions) contradicting his own prior testimony. (the parenthetical this Court's)". *Franks*, 796 F.2d at 1237; *Salmon v. Applegate Homecare & Hospice, LLC*, 2016 WL 389987 (D. Utah 2016). The Court has an obligation to exercise extreme care in determining whether a genuine issue of material fact exists, but a party cannot be allowed to create such issues by presenting contradictory testimony. *Alvarado v. J.C. Penney Co., Inc*., 768 F.Supp. 769, 775-76 (D. Kan.1991).

When evaluating an affidavit, and as here the withdrawal of an admission deemed admitted, under the "sham fact issue" rule, three factors must be considered, whether: "(1)

the affiant was cross-examined during her earlier testimony; (2) the affiant had access to the pertinent evidence at the time of her earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affiant attempts to explain." *Ralston,* 275 F.3d at 973 (quoting *Rios v. Bigler*, 67 F.3d 1543,1551(10th Cir.1995)). Here, the Plaintiff was represented by counsel at her deposition; there is no claim by the Plaintiff that she didn't have access to all pertinent information relative to the questions posed to her at her deposition; no claim or evidence that the withdrawal of the admissions would be based upon information discovered since her deposition; or that she was confused or was otherwise impaired at the time of her testimony. In fact, in her Motion the Plaintiff provides no explanation for not timely responding to the Requests for Admission other than through the generalized statement that "through error the answers to the Request for Admissions were not submitted to Defendant." [Doc. 44, pg. 2, ¶ 3]. As moving party, Plaintiff has the burden of showing that she is entitled to withdraw her deemed admitted admissions. The Plaintiff has not only failed to allege any grounds for withdrawing her admissions under Rule 36(b) enunciated in *Raiser*, but she has not addressed the impact of her contradictory deposition testimony. The Court will not permit the now proffered responses which contradict Plaintiff's sworn testimony and therefore finds that Plaintiff is not entitled to withdraw the deemed admitted Requests for Admission Nos. 4, 5, 7 and 8.

### D.  Whether Plaintiff Should Be Permitted to Withdraw Deemed Admitted Request for Admission No. 2

Plaintiff seeks to withdraw the deemed admission to Request for Admission No 2 and deny that Ocwen's mortgage on her property "has not been *foreclosed.*" (Emphasis the Court's).  Plaintiff's proffered response denies "that the property not never *been in*

*foreclosure*." (Emphasis the Court's).  The terms "in foreclosure" and "been foreclosed" do not, in the Court's opinion, have the same meaning.  The former has reference to initiation of a proceeding to foreclose a mortgage or lien on property.  The term "foreclosed" denotes past tense, with the foreclosure proceeding having been completed with the entry of a judgment of foreclosure and loss of the mortgagor's right of redemption by sale (with court confirmation of the sale). It appears to the Court that the Plaintiff's proffered response/denial is not responsive, if not evasive.  It is, to reach back to a now seldom-used term from law school days, a "negative pregnant" (sometimes called a "pregnant denial") which refers to a denial which implies its affirmative opposite by seeming to deny only a qualification of the allegation and not the allegation itself. *Cramer v. Aiken*, 68 F.2d. 761, 762 (D.C. Cir. 1934).

 The terms "foreclosed" or "foreclosure" were never raised  in her deposition so, as opposed to the above discussed other admissions, there exists no contradiction between Plaintiff's testimony and her request to allow a denial of Admission No. 2.  In her Affidavit attached to her Response to Ocwen's Motion for Summary Judgment, Plaintiff states that "Ocwen filed to foreclose our home in September 2006 (and) this foreclosure was not dismissed until February 2017." [Doc. 43-1, pg. 12].  She also alleges that Ocwen "may not have placed a For Sale sign in the yard, nor, physically removed her... but she and her husband lived under the threat of eviction because of the error made by Ocwen." [Doc. 43-1, pg. 3, ¶ 9; See also, Plaintiff's Deposition, Doc. 35-3, pgs. 22-23 (Plaintiff admitting that the property was not sold and that she was never dispossessed of the property.)].

Other than a cursory remark in Ocwen's Objection that "it is also undisputed that the property has not ever actually been foreclosed", [Objection; Doc. 47, pg. 8], assumedly

based only upon Plaintiff's failure to respond to the Requests for Admission, neither Ocwen nor Plaintiff in their summary judgment pleadings have discussed what occurred in the State Court foreclosure proceedings.  In order to ascertain what occurred in the foreclosure proceedings, the Court has taken judicial notice of certain pleadings filed therein.[5]

The foreclosure Petition was filed on September 12, 2006.  A Journal Entry of Judgment was entered by default on November 15, 2006, with an *in personam* judgment against only Defendant Jimmy R. Stout in the principal sum of $93,740.69 and *in rem* judgment of foreclosure against the home owned by both Mr. and Mrs. Stout.  A Sheriff's Sale of the property was set for January 9, 2007. The Plaintiffs filed bankruptcy on November 20, 2006.  By virtue of the bankruptcy automatic stay, the Notice of Sheriff's Sale was withdrawn. There was no real activity in the case for more than 10 years while the Stouts were in bankruptcy.   After the automatic stay terminated by virtue of the Stouts being granted a discharge and the case closed, on February 23, 2017, Deutsche Bank, Ocwen's predecessor in interest, filed an *Application to Vacate Judgment, Quash Special Execution, Restore Note and Mortgage and for Dismissal*.  Pursuant to the Application, on February 23, 2017, the District Court entered its *Order Vacating Judgment, Quashing*

---

[5] *Deutsche Bank National Trust Co. et al. v. Jimmy R. Stout*, et al, District Court Cleveland County, Oklahoma, Case No. CJ-06-1456-BH. The Court is entitled to take judicial notice of both its own docket sheets and the state court docket sheets. *United States v. Ahidley*, 486 F.3d 1184, 1192, n. 5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); In re *Agrawal,* 560 B.R. 566 (Bankr. W.D. Okla. 2016); *In re Copeland,* 2018 WL 6583991 (Bankr.W.D. Okla. 2018); *Adams v. Watts,* 2009 WL 5101759 (W.D. OK. 2009) (taking judicial notice of the public records of the District Court of Comanche County available on the Internet); *Shoulders v. Dinwiddie,* 2006 WL 2792671 (W.D. OK. 2006) (court may take judicial notice of state court records available on the world wide web including docket sheets in district courts); *Stack v. McCotter,* 79 Fed.Appx. 383, 391 (10th Cir. 2003) (unpublished opinion) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed.R.Evid. 201).
.

*Special Execution, Restoring Note and Mortgage and Dismissal* which provided, in pertinent part, as follows:

> NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED by the Court that the application be, and the same is hereby, granted, and that the judgment heretofore entered in this cause on the 15th day of November, 2006, be, and the same is hereby, vacated, set aside and held for not; that the Sheriff's Return of Special Execution and Order of Sale heretofore issued upon said judgment by the clerk of this Court on the 15th day of November, 2006 and without sale, be the same is hereby approved, and said Execution is quashed, vacated, set aside and held for naught.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the note and mortgage sued upon and described in Plaintiff's Petition **** be, and such note and mortgage are hereby restored as a valid and subsisting note and mortgage, and ordered re-delivered to the Plaintiff, Deutsche Bank National Trust Co.,**** as the owner and holder thereof, and with full force and effect, the same as though said judgment and cancellation had never been adjudged and entered, and that the above entitled cause, and each of every part  thereof, be, and the same is hereby, dismissed without prejudice.

The Court finds that while Ocwen (by its predecessor) had filed foreclosure proceedings, it had not completed those proceedings by sale and confirmation of sale so as to regard the property as having been "foreclosed".  Even if one were to consider the Journal Entry of Judgment of November 15, 2006, as having "foreclosed" the mortgage, the District Court's February 23, 2017 Order vacated the Judgment "as though said judgment and cancellation (of the note and mortgage) had never been adjudged and entered...".  The Court therefore finds that a denial of the Request to Admit that the subject property had "not been foreclosed" would not be supported by the facts. Accordingly, the Court finds that the Plaintiff should not be permitted to withdraw her deemed admission as to Request for Admission No. 2.

### E.   Whether Plaintiff Should be Permitted to Withdraw the Deemed Admitted Request For Admission No. 3.

Request for Admission No. 3 sought Plaintiff to admit "that Ocwen has corrected all its records" [Doc. 44-1] in compliance with the Court's June 5, 2013 *Order Adjudging Ocwen To Be In Contempt.*   Unlike the issue of damages which are the subject of Requests Nos. 4, 5, 7 and 8 which the Plaintiff has testified by deposition she did not sustain, her deposition testimony and her Affidavit are not clearly contradictory to her proffered response denying Request No. 3.

One of Plaintiff's allegations in her *Amended Complaint*, in fact the principal allegation of liability as contrasted with damages, is that Ocwen "failed, neglected and refused to correct it's records as previously ordered by this Court." [Doc. 4, ¶ 8].  Likewise, the Plaintiff reiterates this in her Affidavit as part of her Response to Ocwen's Motion for Summary Judgment when she states that "Ocwen's failure to correct all records caused harm to us, as we were unable to refinance our home." [Doc. 43-1, pg.12].   Plaintiff attempts to support these conclusory allegations when she states in her Response to Ocwen's Statement of Undisputed Material Facts that Ocwen "did in fact not adjust its records after this Court entered the Contempt order... [a]nd the payment history provided by Ocwen to Plaintiff clearly shows that arrearages have increased (See payment history)." [Doc. 43-1, pg. 2, ¶ 3]. [6]

---

[6] In its Motion for Summary Judgment Ocwen has challenged the admissibility of the payment history document to be considered by the Court on two grounds. First, it is not authenticated or properly identified as required by Rule 901 of the Federal Rules of Evidence. Second, the payment history was apparently utilized or prepared for a settlement conference or mediation between the parties and is thus excluded under Federal Rule of Evidence 408, applicable to bankruptcy proceedings by Fed.R.Bankr.P. 9017. The issue of admissibility must be addressed in ruling upon the pending Motion for Summary Judgment; however, it is not necessary to be decided in the present issue before the Court in determining whether Plaintiff should be able to withdraw her deemed admissions.

The Plaintiff testified by deposition that Ocwen did not correct its records:

> Q: Okay. And I just want to make sure I have this down. Whenever all this started, what kind of actions did you take to notify Ocwen of problems that you were having or disputes that you might have had?
>
> A: Well, I'd just gotten through with a Chapter 13.
>
> Q: Uh-huh.
>
> A: They–they bought my–they bought our note in October 2011.
>
> Q: Okay.
>
> A: I was finished with my 13 in December 2011. That's when it was–we finally finished, paid off. And then in January, when the statement started coming, they had–they showed that we owed past due escrow, they showed we owed late charges. Just things like that, and that I knew–that I knew just from the experience I had just been through, that that was not–they were not allowed to do that. That was illegal.
>
> Q: Okay.
>
> A: So I notified my attorney, he got me through the 13, and they said the same thing. That's not right. They don't have–that's not their–they're are not allowed to do that. They've already signed off on this.
>
> Q: Okay. And when you said you notified your attorney, that was Mr. Allen; right?
>
> A: Uh-huh.
>
> Q: And so what happened then? You get these statements, you realized that you believe that they're not right, you contact your lawyer, he agrees with you that they're not right. What did you do next?
>
> A: Let me think. I think–I think, now, that Reese probably just sent them a letter, you know, at the first, and asked them to stop doing that, and there was no response and they did nothing.  So at some point, he said we're going to have to file a lawsuit or–yeah, to–to get than to stop doing that.

[Doc. 35-3, pg. 26, ll. 24-25; pg. 27, ll. 1-25; pg. 28, ll. 1-15].

While it appears from the deposition testimony that the dispute about Ocwen having failed to correct its billings took place in 2012 and was the basis for the contempt action filed that year, it still does not contradict any claim as to whether Ocwen did or did not correct its records after it was found in contempt in 2013 as alleged in this adversary. The Court will therefore consider withdrawal of Admission No. 3 without application of the "sham fact" doctrine, and will base its decision on the standard tests for withdrawal under Rule 36(b) and as enunciated in the Tenth Circuit in *Raiser*.

As discussed above, there are two parts for determining whether a party should be permitted to withdraw an admission deemed admitted. Rule 36(b) "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice." Fed.R.Civ.P. 38 Advisory Committee Note. As to the first part of the test under Rule 36(b), the Tenth Circuit Court of Appeals has held that "'[t]his part of the test emphasizes the importance of having the action resolved on the merits, and is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case.'" *Raiser,* 409 F.3d at 1246.

The Plaintiff testified by deposition and affidavit that Ocwen did not correct its records. She now seeks to do so by denying Request for Admission No. 3. Whether her testimony, affidavit and/or Response to the Admissions are regarded, as alleged by Ocwen, to be "conclusory" and thus should be ignored by the Court may well be an issue in determining whether summary judgment should be granted, *Western World Insurance Co., v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990), but it is not an issue in

determining whether the Plaintiff is entitled to withdraw her admission. The Court believes that the determination of Ocwen's liability should be based on the merits of Plaintiff's claim and not by virtue of her failure to respond to the Request for Admission, particularly where she has not given prior contradictory testimony which would make her denial of the requested admission fall under the "sham fact" rule.

The second part of Rule 36(b) test requires the party opposing withdrawal to show that he would be prejudiced by withdrawal of the admissions. *Id*. Mere inconvenience does not constitute prejudice. *Id*. "The prejudice contemplated by Rule 36(a) is not simply that the party who obtained the admission now has to convince the jury of its truth." *Id.* "The prejudice contemplated by Rule 36(b) ... relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted." *Id*. The Court does not find that permitting the Plaintiff to withdraw her admission to Request No. 3 to impermissibly prejudice Ocwen. Had the Court maintained that the case proceed to trial on December 12, 2018, in accordance with its Scheduling Order, prejudice to Ocwen would in all probability be found prohibiting Plaintiff to withdraw the admissions deemed admitted; however, the trial date was stricken pending the resolution of Ocwen's Motion for Summary Judgment.

It is important to note that it is Ocwen which has the burden of proof in seeking summary judgment, and the Court does not find that there would be prejudice in requiring Ocwen to refute Plaintiff's claims by presenting its own admissible records of Plaintiff's account payment history. At least preliminarily, the Court sees the resolution of this adversary by way of an arithmetical calculation or accounting. The admissibility of Plaintiff's

payment history with Ocwen is in all probability the key to the outcome of this adversary proceeding.  Given what should be the relatively straightforward determination of whether Ocwen corrected its records to reflect whether Plaintiff's (spouse's) account was current as of January 31, 2012, the Court finds that allowing withdrawal of the response to Request for Admission No. 3 would result in little, if any, prejudice to Ocwen, certainly none which would outweigh Plaintiff's right to have her claim heard on its merits.

### III. Conclusion

For the reasons stated above,

**IT IS ORDERED** that *Plaintiff's Motion for Enlargement of Time to Respond to Defendant's First Request for Admission to Plaintiff* [Doc. 44] is **Granted** so as to allow Plaintiff to withdraw her admission heretofore deemed admitted as to the Plaintiff's Request for Admission No. 3 by virtue of her failure to timely respond to the same.  Plaintiff has 10 days of the date of the entry of Order within which to serve upon Defendant her Response to Request for Admission No. 3.

**IT IS FURTHER ORDERED** that *Plaintiff's Motion for Enlargement of Time to Respond to Defendant's First Request for Admission to Plaintiff* [Doc. 44] is **Denied** as to Plaintiff being allowed to withdraw her admissions heretofore deemed admitted as to Plaintiff's Requests for Admissions Nos. 1, 2, 4, 5, 6, 7, 8 and 9.  Said numbered Admissions are deemed admitted.

#  #  #