

**Dated: February 25, 2019**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Jimmy Ray Stout and | ) | Case No. 06-13093-JDL |
| Glenda Kay Stout, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| Jimmy  Ray Stout, and | ) | |
| Glenda Kay Stout, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 17-1048-JDL |
| | ) | |
| Ocwen Loan Servicing, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND SETTING SCHEDULING CONFERENCE**

### I. Introduction

This is an adversary proceeding brought by Chapter 13 Debtors[1] seeking damages

---

[1] Both the underlying bankruptcy as well as this adversary proceeding were commenced by both Debtors, Jimmy and Glenda Stout.  Mr. Stout passed away on March 1, 2018.

from their mortgage loan servicer for failing to adjust its records in violation of a prior order of the court. Plaintiff Glenda Stout seeks actual and punitive damages for damaging her credit, damaging her reputation, loss of income and causing mental and emotional distress. The Defendant mortgage loan servicer, Ocwen Loan Servicing, LLC ("Ocwen"), has moved for summary judgment contending that based upon the undisputed material facts as a matter of law the Debtor cannot sustain her claims. Before the Court for consideration are Ocwen's *Amended Motion for Summary Judgment* (the "Motion") [Doc. 35];[2] the *Response to Defendant's Motion for Summary Judgement* (sic) filed by the Plaintiff/Debtor, Glenda Kay Stout ("Stout") (the "Response") [Doc. 43-1] and Ocwen's *Reply in Support of Motion for Summary Judgment* (the "Reply") [Doc. 46]. Upon review of the aforementioned pleadings and the record in this case and for the reasons set forth below, the Court hereby grants in part and denies in part Ocwen's Motion for Summary Judgment. This Opinion and Order constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R.Bankr.P. 7052 and 9014.[3]

## II. Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a) and the Order of Reference contained in Local Rule LCvR 81.4 for the United States District Court for the Western District of Oklahoma. Furthermore, pursuant to Rule 7008, the parties have stated their consent to the entry of final orders or judgments entered by the

---

[2] References to Docket Entries in this Order refer to the docket in Adversary Case No. 17-1048, unless otherwise noted.

[3] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

Bankruptcy Court.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (O).

### III. Statement of the Case

1. In August 2003 Debtor Jimmy Stout, executed a promissory note in favor of Argent Mortgage Company, LLC, in the amount of and $94,950 secured by a mortgage executed by both him and his wife, Glenda, covering their home in Moore, Oklahoma.  In 2006 foreclosure proceedings were brought by Deutsche Bank, as the servicing agent of Argent.

2.  On November 15, 2006, a judgment in foreclosure was entered in the District Court of Cleveland County.  Five days later, on November 20, 2006, Debtors filed a Chapter 13 bankruptcy.

3.  The Debtors' Plan was confirmed and modified three times over the following years.  On February 24, 2012, the Trustee gave Notice of Final Cure Payment to Ocwen showing that the total arrearage claim in the amount of $20,447.77 had been paid, plus interest, making a total payment of $25,007.02. [BK. 06-13093, Doc. 82].  On April 12, 2012, the Trustee filed his Final Report and Motion for Discharge.  The same day the court entered its Discharge of Debtor After Completion of Chapter 13 Plan. [BK. 06-13093, Doc. 84].

4.  On May 11, 2012, the Debtors filed their *Motion to Deem Mortgage Current*. [BK. 06-13093, Doc. 86].  No response to the Motion was made, and on June 5, 2012, the Court entered its *Order Deeming Mortgage Current*, finding that the Debtors' mortgage payments with Ocwen were deemed current as of January 31, 2012. [BK. 06-13093, Doc. 87].

5.  The case was closed on June 11, 2012.  On December 13, 2012, the Debtors

filed a *Motion to Reopen Case* for the stated purpose of filing an adversary complaint against Ocwen for failure to comply with the *Order Deeming Mortgage Current* that was entered on June 5, 2012. [BK. 06-13093, Doc. 89].  On January 10, 2013, the Court entered its *Order Granting Motion to Reopen Case*. [BK. 06-13093, Doc. 90].  On February 18, 2013, Debtors filed an *Amended Motion to Show Cause Why Ocwen Loan Servicing, LLC,  Should Not be Held in Contempt for Violating the Court Order.* [BK. 06-13093, Doc. 93].  Attached to the Motion were a series of letters from Ocwen written during 2012 indicating that payments were past due, indicating that the escrow amount had changed and returning at least one check because the same was not in the amount of the payment due.

6.   Ocwen did not respond to the *Amended Motion to Show Cause*, and on March 21, 2013, the Court entered its *Order Granting Motion to Show Cause* setting the hearing for April 23, 2013. [BK. 06-13093, Doc. 94].  Ocwen did not appear on that date, and the Court entered its *Order Adjudging Ocwen To Be In Contempt*. [BK. 06-13093, Doc. 97].  The Order provided, among other things:

> Ocwen is ordered to adjust its records to reflect that Debtors' account is current through January 31, 2012, as provided in the Order Deeming Mortgage Current; that Ocwen is ordered to pay Debtors' attorney fees and costs for services related to the Motion to Show Cause; and Ocwen is adjudged to be in Contempt for violating the Court's Order Deeming Mortgage Current.

7. On September 16, 2013, the Court entered its *Order on Motion for Approval of Attorney Fees* by which it was ordered that Ocwen pay Debtors' counsel, the firm of Allen & King, attorney's fees in the amount of $5,111.50. [BK. 06-13093, Doc.100].

8. The case was once again closed on August 13, 2014.  It was reopened on motion

of the Debtors on August 7, 2017, for the purpose of filing this adversary which was filed on August 10, 2017. [BK. 06-13093, Doc. 103].

9.  Plaintiff's Amended Complaint [Doc. 4] asserts that Ocwen failed to correct its records to show that the account was current as of January 31, 2012, as ordered by the court in the June 5, 2013, *Order Adjudging Ocwen To Be In Contempt* [BK. 06-13093, Doc. 97].  Plaintiff alleges that as a consequence of Ocwen failing to adjust its records she has suffered emotional distress, loss of income and damage to her credit.  She seeks actual and punitive damages.  Plaintiff admits that Ocwen has paid the $5,111.50 in attorney's fees as ordered by the court. [Response to Motion for Summary Judgment, Doc. 43, ¶ 5].

10.  Ocwen has moved for summary judgment. [Doc. 35].  Ocwen relies on two things to establish that there is no dispute as to any material fact.  First, it argues that the Plaintiff's own deposition testimony establishes the absence of an actionable claim. Secondly, it argues that Plaintiff did not timely submit a response to Ocwen's Requests for Admission, so that those matters should be deemed admitted under Fed.R.Civ.P. 36(b) made applicable to this adversary proceeding by Rule 7036.[4]

### IV. Summary Judgment Standard

It is appropriate to grant a motion for summary judgment when the pleadings and other materials in the record, together with supporting affidavits, if any, demonstrate that there is no genuine dispute with respect to any material fact and that the moving party is entitled to judgment as a matter of law.  See, Fed.R.Civ.P. 56(c), made applicable to this

---

[4] On February 21, 2019, the Court entered its *Opinion and Order Upon Motion to Withdraw Requests Deemed Admitted* (the "Admissions Order") [Doc. 52].  Pursuant to the Admissions Order, this Court will utilize the admissions found admitted in ruling upon this Motion for Summary Judgment.

adversary proceeding by Rule 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact". *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Courts must review the evidentiary material submitted in support of the motion for summary judgment to ensure that the motion is supported by evidence. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden, then summary judgment must be denied. Hearsay evidence cannot be considered on a motion for summary judgment. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994).

When considering a motion for summary judgment, the court views the record in the light most favorable to the party opposing summary judgment. See, *Deepwater* Investments*, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991); *Harris v. Beneficial Oklahoma, Inc. (In re Harris*), 209 B.R. 990, 995 (10th Cir. BAP 1997). Denial of summary judgment requires existence of genuine material issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505 (1986). No genuine issue of fact exists if a rational fact finder, when viewing the record as a whole, could not find for the party opposing the summary judgment. See, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) ("where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."). Put conversely, a genuine issue of material fact will exist when a "nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant". *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

6

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson,* 477 U.S. 256-57. "[T]he nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof". *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). Here the Court must search the record to determine whether there exists any disputed issue of material fact with regard to the Plaintiff's claims so as to avoid summary judgment.

## V. Analysis and Discussion

### A. Is Defendant Entitled to Summary Judgment on the Issue of Liability as to Whether It Failed to Correct Its Records as Previously Ordered By the Court.

This Court views the outcome of this adversary as boiling down to two questions. First, as to the issue of liability, did Ocwen: adjust "its records to reflect that Debtor's account is current through January 31, 2012", as ordered in the *Order Deeming Mortgage Current*, [BK. 06-13093, Doc 87], and as confirmed by the Court's June 5, 2013, *Order Adjudging Ocwen to Be in Contempt*. [BK. 06-13093, Doc. 97]. Second, if Ocwen has not complied with the Court's Order, what damages did the Plaintiff sustain as a result. The Court will first address whether Ocwen is entitled to summary judgment on the issue of liability. Remarkably, given what should be a fairly straight-forward matter of arithmetical proof, at this point there is not a sufficient evidentiary basis upon which to render summary judgment upon this issue of liability.

Plaintiff makes the conclusory allegation in her *Amended Complaint* that Ocwen has "failed, neglected and refused to correct its records as previously ordered by the Court." The Plaintiff reiterates this in her Affidavit as part of her Response to Ocwen's Motion

when she states that "Ocwen's failure to correct all records caused harm to us, as we were unable to refinance our home." [Doc 43-1, pg. 12]. Plaintiff attempts to add evidentiary support to her conclusory allegations of Ocwen's failure to correct its records when she states in her Response that Ocwen "did in fact not adjust its records after this Court entered the Contempt Order.... [a]nd the payment history provided by Ocwen to Plaintiff clearly shows that arrearages have increased (See payment history)". [Doc. 43-1, ¶ 3, pg. 2]. Plaintiff attaches to her Response what appears to be her and/or her husband's five-page Ocwen "payment history" covering the period of September, 2011 through August 29, 2018, which she assumably believes supports her claim and refutes Ocwen's entitlement to summary judgment. [Doc. 43-1, pg. 7-11]. Would this payment-history exhibit establish Plaintiff's claims that Ocwen failed to correct its records as ordered by the Court or would it exculpate Ocwen from any such liability?

Ocwen challenges the admissibility of the payment history document to be considered by the Court on two grounds. First, it is not authenticated or properly identified as required by Rule 901 of the Federal Rules of Evidence ("FRE"). Second, the payment history was apparently (although there is no statement of the same in the pleadings) utilized or prepared for a settlement conference or mediation between the parties and is thus excluded under FRE 408, applicable to bankruptcy proceedings by Rule 9017. The Court will address the FRE 408 exclusion first.

While the document is not titled as such, it does appear to be, as asserted by Plaintiff, "the payment history provided by Ocwen to Plaintiff." [Doc. 43-1, ¶ 3]. It certainly

8

doesn't appear to be a document that would have been prepared by Plaintiff.[5]  The bottom of each page of the document contains the notation "FRE 408-For Settlement Purposes Only."  Neither Plaintiff nor Defendant have explained in their pleadings the preparation of the payment history nor how it was used, if at all, in the course of settlement negotiations or the mediation that was conducted between the parties.

Pursuant to FRE 408, neither an offer to compromise, acceptance of such offer, nor an actual completed compromise of a disputed claim is admissible to prove liability or invalidity of the claim or amount.  The reasons recognized for exclusion are (1) irrelevance, since the offer or compromise may depending upon the circumstances in reality involve a purchase or attempt to purchase peace rather than an admission of liability, and most importantly (2) policy, in that compromises favored by public policy would be discouraged by admitting the evidence. *Russell, Bankruptcy Evidence Manual*, § 408.1 (Vol. 2, 2018-19 Ed.); See *Deere & Co. v. International Harvester Co.*, 710 F.2d 1551 (Fed. Cir. 1983).

Rule 408 of the Federal Rules of Evidence limits the introduction of evidence regarding offers or acceptance of compromises or settlements and conduct or statements made in compromise negotiations.   It does not, however, "require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." *Computer Associates Int'l., Inc. v . American Fundware, Inc.*, 831 F.Supp. 1516, 1531 (D. Colo. 1993).  FRE 408 is a preclusionary rule, not a discovery rule. It is meant to limit the introduction of evidence of settlement negotiations at trial and

---

[5] Ocwen argues that the payment history although claimed by Plaintiff in her Affidavit to have been obtained from Ocwen might not be what Plaintiff claims it to be because the document is not "'self identifying' as it contains no reference to a loan number, property address, borrower name, or even any reference to Ocwen." [Doc. 46, pg. 5].

is not a broad discovery privilege. *NAACP Legal Defense and Educational Fund, Inc. v. United States Dept. of Justice,* 612 F.Supp. 1143, 1146 (D. D.C.1985). Information which may not be admissible at trial under the rule is still discoverable so long as that information may lead to the discovery of other admissible evidence. See *Manufacturing Sys., Inc. of Milwaukee v. Computer Technology, Inc.,* 99 F.R.D. 335, 336 (E.D. Wis.1983).

Based on the record before it, the Court cannot rule favorably on Ocwen's objection based on FRE 408. There is insufficient evidence before the Court regarding whether the subject payment history was prepared in connection with settlement negotiations or whether it was part of the books and records of Ocwen kept in the ordinary course of business and produced when it was requested by the Plaintiff in either formal or informal discovery. "A party should not be able to immunize from admissibility documents otherwise discoverable merely by offering them in a compromise negotiation." FRE 408, Advisory Committee Notes, 1974 Enactment, citing Senate Report No. 93-1277.

Furthermore, "evidence, such as documents, is not rendered inadmissible merely because it is presented in the course of compromise negotiations if the evidence is otherwise discoverable." *Id.* Similarly, the Court does not believe that a party merely by marking a document as "FRE 408-For Settlement Purposes Only", or similar language, without any additional evidence of what the document actually is and how it was used, if at all, in any settlement negotiations should have such document excluded. See *Cassino v. Reichhold Chemicals, Inc*., 817 F.2d 1338, 1343 (9th Cir. 1987) ("Rule 408 should not be used to bar relevant evidence concerning the circumstances of the (party's claim) itself simply because one party calls its communication with the other party a 'settlement offer'."). The party seeking to assert a privilege must make a clear showing that it applies. *Peat,*

*Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir. 1984); *Lyondell Chemical Co. v. Occidental Chemical Corp.,* 608 F.3d 284, 294 (5th Cir. 2010) (Party objecting to admission of evidence, as being in the nature of settlement communication, bears the burden of proving preliminary facts required to show its inadmissibility.).  The Court finds Ocwen has not met its burden that FRE 408 precludes the document's consideration.  This finding by the Court does not, however, completely determine whether the payment history document is admissible in the context of this summary judgment motion.  Aside from FRE 408, is the document otherwise admissible?

"In order for documents not yet part of the court record to be considered by a court in support of or in opposition to a summary judgment motion they must meet a two-prong test: (1) the document must be attached to and authenticated by an affidavit which conforms to Rule 56(e); and  (2)  the affiant must be a competent witness through whom the document can be received into evidence ... (and) Documentary evidence for which a proper foundation has not been laid cannot support a summary judgment motion, even if the documents in question are highly probative of a central and essential issue in the case."  *In re Harris,* 209 B.R. 990, 996 (10th Cir. BAP 1997) ("It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment.  In order to be considered by the court, 'documents must be authenticated by and attached to an affidavit that meets the requirements of [Fed.R.Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence'. This court has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment.") (citing, *Canada v. Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir. 1987); *IBP, Inc. v. Mercantile Bank of*

*Topeka*, 6 F.Supp.2d 1258, 1263 (D. Kan. 1998); *Farmers Alliance Mutual Insurance Co. v. Naylor,* 452 F.Supp.2d 1167, 1176-77 (D. N.M. 2006).  Neither Plaintiff nor Ocwen has properly identified or authenticated the payment history document for admissibility.

 As stated above, the admissibility of Plaintiff's payment history with Ocwen may be key to the outcome of this adversary proceeding, although without supporting testimony the Court is unable to ascertain its exact significance.  Ocwen argues that the payment history offered by the Plaintiff is not admissible and its absence in the face of the Plaintiff's failure to timely respond to the Requests for Admission entitles it to summary judgment. By its Admissions Order, [Doc. 52], the Court found that Request No. 3 which sought the Plaintiff to "[a]dmit that Ocwen has corrected its records as previously ordered by the Court" should not be deemed admitted by the Plaintiff's failure to timely respond to the same. Furthermore, Ocwen's argument that the inadmissibility of the payment history document entitles it to summary judgment overlooks the crucial fact that it is Ocwen that is the movant and therefore bears the burden of establishing that there is no disputed material issue of fact entitling it to judgment as a matter of law.  While the Plaintiff bears the ultimate burden of proof of establishing at trial that Ocwen wrongfully failed to correct the Plaintiff's account payment records, the burden at this summary judgment stage lies with Ocwen to show there is no factual dispute as to the propriety of its handling of the Plaintiff's account as ordered by the Court.

Plaintiff has testified by deposition and affidavit that Ocwen did not make such corrections.  Plaintiff's conclusory testimony and affidavit may or may not have any evidentiary support, but in the absence of any admissible evidence from Ocwen to refute such claims, there remains the material disputed fact question of whether Ocwen has

12

violated the Court's previous Contempt Order. This fact issue precludes summary judgment. Ironically, the excluded "payment history" document might have entitled either party to judgment in its favor, but that payment history has been deemed inadmissible and precluded from the Court's consideration by Ocwen's proper objection.

### B. The Undisputed Facts Establish That Plaintiff Has Not Sustained Any Compensable Damages for Defamation of Credit, Reputation or Loss of Income.

The *Amended Complaint* alleges that Ocwen's failure, neglect and refusal to correct its records as previously ordered by the court and improperly returning Plaintiff's tendered payments damaged the Plaintiff by slandering her reputation, caused her emotional distress, loss of income and damage to her credit entitling her to actual and punitive damage and attorney's fees. Ocwen's *Answer to Amended Complaint* [Doc.19] admits many of the allegations leading up to, and including, the Court finding it in contempt in 2013, but denying that it had failed, neglected or refused to correct its records as previously ordered by the court, that Plaintiff's credit or reputation was damaged, or that the Plaintiff had suffered emotional distress or loss of income.

The "undisputed facts" for purposes of the consideration of Ocwen's Motion for Summary Judgment established by (1) the Requests for Admissions which are deemed admitted by the Court's Admission Order due to Plaintiff's failure to timely respond, (2) the acknowledgment by Plaintiff that certain Requests should be admitted, and/or (3) facts admitted in Plaintiff's deposition testimony are as follows:

1. Plaintiff still resides in the subject property. [Response to Request for Admission No. 1, Doc. 44-1]. This undisputed fact/admission is further supported by Plaintiff's deposition testimony wherein she testified that she still resided at the subject property and

has lived there since 1990. [Doc. 35-3, pg. 7, ll. 6-11].

2.   The last payment which Plaintiff tendered to Ocwen on account of her loan was in or around June 2016. [Request for Admission No. 4 deemed admitted by Court's Admission Order].   Furthermore, in her deposition Plaintiff testified as follows:

> Q: Okay. Perfect.  And during this time period where you didn't agree with the balance that they were sending you, you continued to make some monthly payments that you believed to be correct?
>
> A: Yes.
>
> Q: How long did you continue to make those payments?
>
> A: Until June 2016.

[Doc. 35-3, pg. 29, ll. 9-17].

3.   Plaintiff has no facts or evidence to support her claim that her reputation has been slandered as a result of Ocwen's servicing of her loan. [Request for Admission No. 5 deemed admitted by Court's Admission Order].   This finding is further supported by Plaintiff's deposition testimony:

> Q: Okay.  There have also been statements in your pleadings that your reputation was slandered. Can you describe what kind of slander or damage occurred to your reputation?
>
> A: Well, I did share this–this whole mess with a few friends.
>
> Q: Okay.
>
> A: Just–and my family.  They knew about it.  But beyond that, I don't–I don't know.
>
> Q: Okay.  And you're the one that shared the information with your family and friends.  It wasn't that Ocwen was notifying your family and friends?
>
> A: No.

*****

Q: Okay. Do you have any knowledge that Ocwen ever spoke to anybody about the circumstances or situation?

A: I have no knowledge of that.

[Doc. 35-3, pg. 26, ll. 2-15, 20-23].

4. No physician, therapist, or other licensed health professional has treated Plaintiff for emotional distress arising from Ocwen's servicing of her loan. [Response to Admission No. 6; Doc. 44-1]. Plaintiff did testify in deposition that she suffered from stress, depression, worry and anxiety (including an anxiety attack) which required medication, but that was brought about by her husband's suffering and hospitalization for myelofibrosis (cancer of the bone marrow). [Doc. 35-3, pgs. 39, ll. 21- 25; pg. 40, ll. 1-8, 23-25, pg. 41, ll. 1-24]. Plaintiff testified that she had talked to her minister, who was also a financial planner, concerning both her husband's health and "all of this Ocwen stuff many times." [Doc. 35-3, pg. 42, ll. 16-22, pg. 43, ll. 1-16]

5. Plaintiff has no facts or evidence to support a contention that she sustained any loss of income by any action of Ocwen. [Response to Admission No. 7 deemed admitted by Court's Admission Order]. Consistent with that deemed admission, Plaintiff testified in deposition as follows

Q: Okay. You've also mentioned that you had to take off of some work to speak to Ocwen about different issues that you've had. Do you have any kind of estimate as to how much time you took off to speak with Ocwen?

A:. I would say probably – – probably five times.

Q: Okay. And five times a year? Five times since 2012, or...

A: No. I've never spoken to Ocwen.

Q: Okay.

A: So the only time I have is when we were doing the HAMP.

Q: Okay.

A: Or trying to do it.

Q: Do you remember when that was?

A: 2016.

Q: Okay.  And when you were trying to do that HAMP,[6] that's when you had to take off some time from work?

A: Uh-huh.

Q: Okay.  When you say five times, is that five full days?

A: No.

Q: Okay.

A: Just a few hours.

Q: Okay.  Have you ever been denied a promotion or other opportunities at work because of these Ocwen matters?

A: No.

[Doc. 35-3, pg. 11, ll. 7-25; pg. 12, ll. 1-11].

6.  Plaintiff has no facts or evidence to support the contention that her credit rating was damaged by any action of Ocwen. [Request for Admission No. 8 deemed admitted by Admissions Order].  Furthermore, in her deposition, Plaintiff testified as follows:

Q: Do you know what your credit score is today?

---

[6] Home Affordable Modification Program (HAMP) was a government program introduced in 2009 to respond to the subprime mortgage crisis.  It expired in 2018.  It is well-settled that HAMP does not create a private right of action. See e.g., *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769 (4th Cir. 2013); *In re Gill*, 2016 WL 3920608 (Bankr. W.D. Okla., 2016).  Plaintiff does not attempt to assert a claim under HAMP.

16

A: Not exactly.

Q: Okay. Do you know what it is compared to what it was before you filed bankruptcy?

A: No.

Q: Okay. Do you have any idea what it was before you filed bankruptcy?

A: If I did, I don't remember.

Q: Okay. Since 2012, do you know, has your credit has gone up or down?

A: Well–

Q: Or I guess stayed the same? That's also an option.

A: I think it's gotten–I don't know. I don't know.

Q: Okay

A: Since I don't know what it was, I don't know.

[Doc. 35-3, pg. 23, ll. 18-25; pg. 24, ll. 1-12].

****

Q: Okay. Do you know what kind of–in your pleadings, there were some claims that Ocwen damaged your credit. Do know what actions they took that damaged it or how they damaged it?

A: We didn't know that they were not reporting any bad credit. We did not know they were not reporting it.

Q: So they haven't been reporting?

A: Huh-uh.

Q: Do you know during what time period were they not reporting?

A: All the way back to 2011 I guess.

Q: Okay. And when you say they weren't reporting bad credit,

what you mean by that?

A: Well, we assumed that with everything that they were doing, that–and what we were doing, which is what we were advised to do, they would be reporting that we were delinquent or we hadn't made payments.  Because they were really–they really were accusing us of that.  But we just assumed that it would be on our credit report, but it never was.

Q: Okay.  So how did they damage your credit?

A: Well–

Q: In your opinion.

A: Well, all we knew is what we learned when I spoke to Ellie Wade.  And since she really didn't pull a credit report, we did not know at the time.  She was just going on the information that I gave her.

Q: Okay.  So you don't know of any way that Ocwen damaged your credit?

A: I don't.

[Doc. 35-3, pg. 24, ll. 18-25, pg. 25, ll. 1-25, pg. 26, ll. 1].

In her Response to the Motion for Summary Judgment, Plaintiff's counsel appears to concede that Ocwen did not improperly negatively report Plaintiff's credit: "She (Plaintiff) was not on the promissory note and therefore Ocwen would not report as to her credit, of course there is no *bad* credit, there is *no* credit". (Emphasis added.). [Doc. 43-1, ¶ 10]. Plaintiff attached to her Response her Affidavit in which she asserts, among other things: "Ocwen's failure to correct our records caused harm to us, as we were unable to refinance her home.  I contacted a mortgage broker, Ellie Wade, who informed me that she could not help us because of the negative and incorrect reporting by Ocwen." [Doc. 43-1, pg. 12]. That statement is at variance with the Plaintiff's deposition testimony recounted above that the mortgage broker, Wade, in making the decision not to refinance the home *did not rely*

18

*upon any credit reporting by Ocwen* but only upon information provided by the Plaintiff.

It is well-settled that a party cannot avoid summary judgment simply by raising conclusory allegations. *Western World Insurance Corp. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990). Most affidavits of a party to litigation, including that of the Plaintiff here, are by their very nature "self-serving". That does not make them irrelevant or to be disregarded. On the other hand, an affidavit will be disregarded when "it conflicts with the affiant's prior sworn statements" and the court determines "it constitutes an attempt to create a sham fact issue." *Rural Water District No. 5 Wagoner County, Oklahoma v. City of Coweta*, 949 F.Supp.2d 1091, 1102 (N.D. Okla. 2013) (quoting *Lantec Inc. v. Norvell Inc.*, 306 F.3d 1003, 1016 (10th Cir. 2002)); See also *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986).

7. Plaintiff has no facts or evidence to support her contention that her reputation was slandered by any action of Ocwen. In her deposition, Plaintiff testified as follows:

> Q: Okay. There have also been statements in your pleadings that your reputation was slandered. Can you describe what kind of slander or damage occurred to your reputation?
>
> A: Well, I did share this–this whole mess with a few friends.
>
> Q: Okay.
>
> A: Just–and my family. They knew about it. But beyond that, I don't–I don't know.
>
> Q: Okay. And you're the one that shared the information with your family and friends. It wasn't that Ocwen was notifying your family and friends?
>
> A: No.

*****

Q: Okay. Do you have any knowledge that Ocwen ever spoke to anybody about the circumstances or situation?

A: I have no knowledge of that.

[Doc. 35-3, pg. 26, ll. 2-15, 20-23].

Based on her deposition testimony and the deemed admissions, the Court finds that regardless of whether or not Ocwen failed to correct her payment history as ordered by the Court, she has not sustained any damages for defamation of credit, loss of reputation or loss of income.

## VI. Conclusion

For the reasons set forth above, the Court finds that the Defendant has not met its burden to demonstrate that there is no disputed material fact as to whether it failed to correct its account payment records of the Plaintiff in accordance with the Bankruptcy Court's *Order Adjudging Ocwen To Be In Contempt* of June 5, 2013 [BK. 06-13093, Doc. 97]. The Court further finds that the record before the Court demonstrates that there is no disputed material issue of fact as to the Plaintiff not having suffered damages for loss of credit, loss of reputation, credit defamation or loss of income regardless of whether Defendant did or did not correct Plaintiff's account records as previously ordered by the Court. Accordingly,

**IT IS ORDERED** that Ocwen Loan Servicing, LLC's *Amended Motion for Summary Judgment* [Doc. 35] is **Granted in Part** as to any claim of damages for loss of credit, credit defamation, loss of reputation or loss of income, and **Denied in Part** as to the Plaintiff's claim of Ocwen's liability as it relates to whether Ocwen corrected Plaintiff's account in compliance with the *Order Adjudging Ocwen To Be In Contempt*. [BK. 06-13093, Doc. 97].

The issue of any damages in the form of attorney's fees and costs, if any, to be awarded to the Plaintiff should she prevail at trial is reserved pending the resolution of any remaining issues to be tried by the Court and if so sought by the Plaintiff.

**IT IS FURTHER ORDERED,** that the Court will conduct a Scheduling Conference on the 27th day of March, 2019, at 10:15 A.M., 2nd Floor Conference Room, to set the trial date for the remaining issue consistent with this Order.

**# # #**